**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| **VIVIANA ANSELME and ALYSHA HONEYCUTT** ) ) ) | |
| Plaintiffs. ) ) | Case No. 3:20-CV-5-NKM |
| v. ) ) | |
| **FLUVANNA CORRECTIONAL CENTER FOR WOMEN,** *et al*. ) ) ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………..1

II.     FACTUAL BACKGROUND………………………………………………....2

III.    LEGAL STANDARD…………………………………………………......6

        A.      Rule 12(b)(6)………………………………………..…6

        B.      Deliberate Indifference……………………………………………………..7

IV.     ARGUMENT……………………………………………………………..8

        A.      Plaintiff Anselme Has Met the Statute of Limitations for Her Claim Against
                Defendant Aldridge in Count I……………………………………………8

        B.      Plaintiffs Properly Plead Defendant Aldridge's Deliberate Indifference and
                Responsibility for the Misconduct Against Them, and the Allegations are
                Sufficiently Serious to Support a Constitutional Violation…………………...11

        C.      Anselme Has Properly Pleaded a Constitutional Violation Against Perez…...16

        D.      Plaintiffs Have Properly Pleaded a Claim for Injunctive Relief…………...…20

        E.      Plaintiffs Request Leave to Amend……………………………………………21

V.      CONCLUSION………………………………………………...…………..22

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)…………………………………………………...…..6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)…………………………………………………….…6

*Berry v. Oswalt*,
143 F.3d 1127 (8th Cir. 1998)…………………………………………...…..18

*Boddie v. Schneider*,
105 F.3d 857 (2d Cir. 1997)……………………………………….……..20

*Calhoun v. DeTella*,
319 F.3d 936 (7th Cir. 2003)…………………………………….……….18

*Castillo v. Bobelu*,
1 F. Supp. 3d 1190 (W.D. Okla. 2014)………………………...………….10

*Chapman v. Willis*,
No. 7:12-cv-00389, 2013 U.S. Dist. LEXIS 74694 (W.D. Va. May 28, 2013)….20

*Collins v. Cundy*,
603 F.2d 825 (10th Cir. 1979)…………………………………...………….19

*D.T.M. v. Cansler*,
382 Fed. App'x 334 (4th Cir. 2010)…………………………………………...21

*De'Lonta v. Clarke*,
No. 7:100-cv-00483, 2013 U.S. Dist. LEXIS 5354 (W.D. Va. Jan. 14, 2013).18,20

*De'Lonta v. Johnson*,
708 F.3d 520 (4th Cir. 2013)…………………………………………..……..7

*Depaola v. Clarke*,
884 F.3d 481 (4th Cir. 2018)…………………………………………….…..10

*Estelle v. Gamble*,
429 U.S. 97 (1976)……………………………………………………………19

*Farmer v. Brennan*,
511 U.S. 825 (1994)…………………………………...………….7, 14, 15, 19

*Giron v. Corr. Corp. of Am.*,
    191 F.3d 1281 (10th Cir. 1999)……………………………………………….……..19

*Graham v. Florida*,
    560 U.S. 48 (2010)……………………………………...……………………19, 20

*Hayes v. Dahkle*,
    No. 9:16-CV-1368, 2017 U.S. Dist. Lexis 180424 (N.D.N.Y. Oct. 30, 2017)…..19

*Henslee v. Lewis*,
    153 Fed. App'x 178 (4th Cir. 2005)……………………………….…………..19

*Heywood v. Va. Peninsula Reg'l Jail Auth.*,
    217 F. Supp. 3d 896 (E.D. Va. 2016)…………………………………….…..…5

*Idaho v. Coeur D'Alene Tribe*,
    521 U.S. 261 (1997)……………………………………………….…………..21

*Jehovah v. Clarke*,
    792 F.3d 457 (4th Cir. 2015)……………………………………………………7

*Makdessi v. Fields*,
    789 F.3d 126 (4th Cir. 2015)………………………...………………7, 8, 14, 15

*Morrison v. Martin*,
    755 F. Supp. 683 (E.D.N.C. 1990)……………………….……………………19

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009)………………………………………..…………..6

*Parrish v. Cleveland*,
    372 F.3d 294 (4th Cir. 2004)……………………………………………..…..7

*Philips v. Pitt County Mem. Hosp.*,
    572 F.3d 176 (4th Cir. 2009)…………………………………………...……7

*Robertson v. Sea Pines Real Estate Cos.*,
    679 F.3d 278 (4th Cir. 2012)……………………………………………………6

*Shaw v. Stroud*,
    13 F.3d 791 (4th Cir. 1994)…………………………………..…………11, 13

*Shelton v. Angelone*,
    148 F. Supp. 2d 670 (W.D. Va. 2001)……………………………………..8

*Slade v. Hampton Rds. Reg'l Jail,*
    407 F.3d 243 (4th Cir. 2005)……………………………………………………6

*United States v. Bryant,*
    949 F.3d 168 (4th Cir. 2020)……………………………………………...…….17

*Whitley v. Albers,*
    475 U.S. 312 (1986)………………………………………………….……...19

*Wilkins v. Gaddy,*
    559 U.S. 34 (2010)……………………………………………...…………..19

*Wilson v. United States,*
    No. 3:18-cv-00890, 2019 U.S. Dist. LEXIS 152280 (S.D.W. Va. Aug. 1, 2019)..10

*Women Prisoners of the D.C. Dep't of Corrections v. District of Columbia,*
    93 F.3d 910 (D.C. Cir. 1996)……………………………………………….…………17

*Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia,*
    877 F. Supp. 634 (D.D.C. 1994)………………………………….……17, 18, 20

## Statutes & Rules

42 U.S.C. § 1983………………………………………………………….…*passim*

Fed. R. Civ. P. 12……………………………………………………………...…..6

Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. § 30301, *et seq*..……………..16, 19

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*..………..…10
.

Va. Code § 8.01-229…………………………………………………………1, 9

Va. Code § 8.01-380……………………………………………………..……..1, 9

Va. Code § 18.2-64.2…………………………………………………...…..5, 19

Va. Code § 18.2-67.4………………………………………………….......19

U.S. Const. amend. VIII……………………………………………………*passim*

U.S. Const. amend. XIV…………………………………………..……..1, 7, 8, 12

Plaintiffs Viviana Anselme ("Anselme") and Alysha Honeycutt ("Honeycutt") (collectively "Plaintiffs"), by and through undersigned counsel, hereby file their memorandum in opposition to the motion to dismiss filed by Defendants Fluvanna Correctional Center for Women ("FCCW"), Eric Aldridge ("Aldridge"), and Sgt. Perez ("Perez") (collectively "Defendants"). For the reasons that follow, Defendants' motion should be DENIED.

## I.  INTRODUCTION

Plaintiff Anselme has met the statute of limitations for her claims against Aldridge. While Defendants argue that the April 8, 2017, sexual assault by Defendant Eric Griffin ("Griffin") is outside of the statute of limitations and is not saved by the non-suit provisions of Va. Code § 8.01-380 & 8.01-229(E)(3) because Aldridge was not named in Anselme's prior state court case, Anselme alleges that she was assaulted by Perez within the statute of limitations, also due to Aldridge's deliberate indifference. Because she been repeatedly victimized at FCCW and remains at high risk, this should be considered a continuing violation and her claims should proceed.

Plaintiffs have also stated claims against Aldridge in Counts I and II. Each Plaintiff alleges sexual assaults that were the proximate result of Aldridge's deliberate indifference to their Eighth and Fourteenth Amendment rights. Aldridge's knowledge of Griffin, Perez, and Defendant Raheem Rumsey's ("Rumsey's")[1] past acts and sexual proclivities against inmates, as well as his overall knowledge that sexual contact between corrections officers and inmates was endemic in

---

[1] The Complaint currently names "Raheem Ramsey" as a defendant. Since filing the Complaint, Plaintiffs have learned through discovery that this defendant's actual name is "Raheem Rumsey." Plaintiffs request leave to amend the Complaint to name Rumsey correctly. *See infra* § IV.E.

FCCW, combined with his failure to act in the face of such obvious risk, constitutes deliberate indifference which led directly to the sexual assaults against and victimization of Plaintiffs.

Anselme has stated a claim against Perez in Count I. While Defendants contend that words alone are not objectively serious enough to constitute a constitutional violation, this argument ignores the totality of what Perez did to Anselme, who had previously been physically sexually assaulted at FCCW. Far from just verbally harassing her, Perez **ordered** her to show him her private parts when she was complaining about inmate-on-inmate sexual assault. While ordering her to show him her private parts, he touched his own genitalia and sexually taunted Anselme.  Perez's conduct constituted assault:  words that threatened a harmful or offensive touching, coupled with the apparent present ability to carry it out, which put Anselme in reasonable fear of being physically violated again. The situation should be considered as a whole, and Anselme's claim should continue.

Finally, Plaintiffs have stated a claim for injunctive relief by alleging that they have suffered constitutional violations of a type that are widespread and continuing at FCCW.

## II.     FACTUAL BACKGROUND

Anselme and Honeycutt are inmates at FCCW, a state prison run by the Virginia Department of Corrections. Compl. ¶¶ 1, 6-7. Perez[2] is a correctional officer at FCCW. *Id.* at ¶ 4. Perez is responsible for receiving and evaluating sexual assault complaints at FCCW.  *Id.* at ¶¶ 4, 41.  In October 2018, Perez ordered Anselme to show him her genitals and, when she refused, grabbed his crotch and told Anselme that he had a "big dick," which he then offered to show her, telling her that she "made his dick hard." *Id.* at ¶¶ 39-41.

---

[2] When Plaintiffs filed their Complaint, they did not yet know Perez's full name. Since filing the Complaint, Plaintiffs have learned through discovery that his name is Constantino Perez, III. Plaintiffs request leave to amend the Complaint to name Perez correctly.  *See infra* § III.E.

Aldridge was, at all relevant times, the warden of FCCW. *Id.* at ¶ 2. Plaintiffs allege that Aldridge was on notice of Griffin's sexual assault on Anselme in April 2017, but did nothing about it until she reported the attack herself. Compl. ¶¶ 15-17, 54-55. Plaintiffs further allege that Aldridge was aware of Griffin, Rumsey, and Perez's, specific histories of misconduct and/or was aware that sexual misconduct was pervasive and endemic at FCCW. *Id.* at ¶ 77, 81. Plaintiffs further allege that "Anselme and Honeycutt were not Griffin and Ramsey's [*sic*] first victims [and that] FCCW and Aldridge was on notice of their[] proclivity for sexually assaulting inmates. …" *Id.* at ¶ 73.

There is an inherent imbalance of power, on the basis of gender, between Plaintiffs and FCCW's employees and correctional officers. *See Id.* at ¶ 67 n. 4. Plaintiffs allege despicable sexual assaults committed against them by FCCW correctional officers under Aldridge's watch. Anselme alleges that on April 8, 2017, Griffin watched her change in her cell, threatened her with a disciplinary charge for indecent exposure, and then sexually assaulted her digitally, causing her injury. *Id.* at ¶¶ 14-19. Following the attack, Griffin harassed her and continued to seek her attention. Compl. ¶¶ 21-25. Some of Griffin's harassing conduct was witnessed by other inmates. *Id.* at ¶¶ 23-24, 27-31, 33. When Anselme threatened to report his conduct, Griffin, confident that he would face no consequences, answered "Go ahead. They will never believe you," and laughed at her. *Id.* at ¶ 32. Anselme reported Griffin's conduct on May 24, 2017, and the case was referred to the Commonwealth's Attorneys' office on June 18, 2017.  *Id.* at ¶¶ 34-35. While Anselme requested to be moved from FCCW due to the assault on May 24, 2017, she was never transported. *Id.* at ¶¶ 34, 36. Griffin was convicted of felony carnal knowledge of an inmate, based on the allegations against him by Anselme, on June 14, 2018. Compl. ¶ 37.

Anselme was later victimized again in October 2018, by Perez. *Id.* at ¶¶ 39-41. Perez ordered Anselme to show him her genitals and, when she refused, grabbed his crotch and told her he had "a big dick.," offered to show it to her, and told her she "made his dick hard." *Id.* at ¶ 39. On a separate occasion, Perez summarily dismissed Anselme's report of inmate-on-inmate sexual assault, told her to "stop making so much noise" by reporting sexual assault, and again told Anselme  that she "made his dick hard," which "hardly ever happens, because he normally has control." *Id.* at ¶ 41. Perez was, in fact, "well known" for such conduct at FCCW. *Id.* at ¶ 40.

In the early morning of November 20, 2019, Rumsey summoned Plaintiff Honeycutt from her cell, took her into an employee-only area with no video surveillance coverage, and down a set of stairs to a landing, where he violently assaulted and raped her. Compl. ¶¶ 43-46. At one point, another officer hailed Rumsey over the intercom, and he left to speak with the other officer before returning and continuing his assault. *Id.* at ¶¶ 47-49. Rumsey then instructed Honeycutt to wait there for a moment to let him leave before returning to her cell, which she did. *Id.* at ¶ 50. Honeycutt filed an informal complaint against Rumsey on November 28, 2019, followed by a grievance on December 16, 2019.  *Id.* at  ¶ 51.

Besides the specific allegations made by Anselme and Honeycutt against Griffin, Perez, and Rumsey, Plaintiffs go further and document the history of sexual violence at FCCW, as well as retaliation against them for making their complaints. *Id.* at ¶ 53. Plaintiffs allege that Anselme's cell, where the assault occurred, was monitored, but that nobody (including Aldridge) did anything about the attack until she reported it. *Id.* at ¶ 54. Plaintiffs also allege that Griffin had a long history of sexual misconduct at FCCW that Aldridge did nothing to stop. Compl. ¶ 57. This long history includes at least one allegation against Griffin similar to what Anselme reported. *Id.* at ¶¶ 57-60. Plaintiffs also allege that Rumsey was well known among inmates at FCCW for seeking sexual

contact with inmates, often by trading contraband or other favors. *Id.* at ¶ 61. And Plaintiff allege Perez was well-known for asking inmates to expose their genitals and providing favors in return. *Id.* at ¶ 41; *see also* ¶ 70 (citing another acknowledged attack on an inmate).

Besides the numerous specific instances of sexual assault suffered by Plaintiffs, witnessed by Plaintiffs, and reported to Plaintiffs, Plaintiffs allege that FCCW has "a long and well-documented history of sexual predation by correctional officers, as well as dysfunctional responses to such predation." *Id.* at ¶¶ 63-64; *see also* ¶ 65 (citing VDOC report of 44 inmates' complaints of sexual assault and harassment by FCCW employees, with 13 cases resulting in termination or resignation). Plaintiffs also report the testimony of former FCCW inmate Melissa Andrews, who testified before a review panel of the US DOJ Office of Justice Programs, that sexual contact between inmates and correctional officers was endemic at FCCW, with inmates trading what she referred to as "consensual" sex for perks and special treatment. Compl. ¶ 67. However, under Virginia law, there is no such thing as consensual sex between an inmate and a corrections officer. *Id.* at ¶ 67 n.4 (citing See Va. Code § 18.2-64.2; *Heywood v. Va. Peninsula Reg'l Jail Auth.*, 217 F. Supp. 3d 896, 899 n.4 (E.D. Va. 2016)). Andrews also testified that reports of sexual assault in FCCW are either ignored or frequently result in the offending correctional officer being transferred elsewhere in the prison, where they are free to prey on others. *Id.* at ¶ 68. Plaintiffs also cite testimony that "complaints relating to officer on inmate misconduct outnumber those relating to inmate on inmate conduct by a factor of about ten to one," but that FCCWs policies are, perversely, more focused toward inmate on inmate conduct. *Id.* at ¶ 69.  This has the effect of deflecting attention away from the more serious problem of officer on inmate assault and creating an atmosphere that perpetuates officer on inmate assault.  *Id.*  Finally, Plaintiffs allege that fully *six percent*—more than one in twenty—of FCCW inmates reported being victimized by a staff

member, which is three times the national average.  Compl. ¶ 70.  Given the prevalence of reported assaults, the number of assaults that go unreported for fear of retaliation, or simply a lack of confidence that the reports will be taken seriously, is likely much larger.

Supported by these allegations, Plaintiffs allege: "In sum, sexual assault on inmates has been rampant at FCCW both before and during Aldridge's tenure as warden. The prevalence of assault required FCCW and Aldridge to take corrective measures to ensure that inmates like Anselme and Honeycutt would be free of sexual assault. FCCW and Aldridge either took no corrective measures, or took measures that were patently ineffective." *Id.* at ¶ 72.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible if, after "accept[ing] all well-pled facts as true and constru[ing] these facts in the light most favorable to the plaintiff," the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678-79). "A complaint need not make a case against a defendant or ***forecast evidence*** sufficient to ***prove*** an element of the claim. It need only ***allege facts*** sufficient to ***state*** elements of the claim." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) (emphases in original) (quotations and citations omitted).

The Fourth Circuit has explained that courts should be particularly hesitant to dismiss civil rights complaints under Rule 12(b)(6). *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th

Cir. 2005) ("[W]e must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.")

### B.     Deliberate Indifference

A claim under § 1983 requires the plaintiff to plead that a person acting under color of state law deprived the plaintiff of a federally protected right. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A plaintiff alleging that a prison or prison official violated his Eighth or Fourteenth Amendment rights must plead facts that plausibly show a "deliberate indifference to a substantial risk of physical harm . . ." *Parrish v. Cleveland*, 372 F.3d 294, 302 n.10-11 (4th Cir. 2004). This "requires two showings, one objective and one subjective. First, [plaintiff] must [plead facts that plausibly show] that the deprivation of a basic human need was objectively sufficiently serious. Second, plaintiff] must [plead facts that plausibly show] that subjectively the officials acted with a sufficiently culpable state of mind." *Jehovah v. Clarke*, 792 F.3d 457, 469 (4th Cir. 2015) (quotations and citations omitted).

The subjective prong requires "a showing of deliberate indifference by prison officials." *De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). Deliberate indifference "entails something more than mere negligence but does not require actual purposive intent. . . . It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Id.* (internal quotations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In *Makdessi v. Fields*, 789 F.3d 126 (4th Cir. 2015), the Fourth Circuit, quoting *Farmer*, explained in detail how a plaintiff may prove deliberate indifference:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious. . . . [A]n injury

might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it. A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and *the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it. Direct evidence of actual knowledge is not required.*

*Id.* at 133-34 (quotation marks and citations omitted) (emphasis added).

## IV.   ARGUMENT

### A.   Plaintiff Anselme Has Met the Statute of Limitations for Her Claim Against Defendant Aldridge in Count I

Defendants argue that Anselme has not met the statute of limitations for her claim against Aldridge in Count I.  Defendants' argument fail[3] because Anselme has stated a claim under Count I arising out of violations of her Constitutional rights that occurred within the limitations period.

Anselme has stated a claim against Aldridge for his deliberate indifference which lead to correctional officers' sexual assaults of Plaintiffs generally, and Anselme specifically, within the limitations period. Anselme alleges that she was violently sexually assaulted by Griffin, on November 8, 2017, and again by Sgt. Perez, in October of 2018. At both times, Plaintiff alleges that Aldridge was the warden of FCCW, Compl., ¶ 2, and states specifically that "Aldridge violated Anselme's rights under the Eighth and Fourteenth Amendments by being deliberately indifferent to the risk that Griffin and Perez would assault Anselme, *because of known specific histories of misconduct by those officers* and/or because sexual misconduct is pervasive and endemic at FCCW." Compl., ¶ 77 (emphasis added). Anselme alleges, in particular, that Aldridge was aware of Griffin's "proclivity for sexual assaulting inmates, and failed to terminate [his] employment

---

[3] Plaintiffs acknowledge that the relevant statute of limitations for § 1983 claims in Virginia is two years. *Shelton v. Angelone*, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001).

before [he] could assault [her]." Compl., ¶ 73. Because the incident involving Sgt. Perez occurred in October of 2018, it is within the statute of limitations period and is actionable here as alleged in Count I.

Regarding Defendant's argument that Count I should be partially dismissed as against Aldridge arising from Griffin's attack on Anselme on April 8, 2017 due to the two year statute of limitations, Plaintiff acknowledges, factually, that the Griffin incident occurred more than two years' prior to suit, and that Aldridge personally was not named in the prior suit (the non-suit of which tolled the statute of limitations against the other named Defendants). *See* Def. Memo, at 4-6 (citing Va. Code § 8.01-380 & 8.01-229(E)(3)). But Count I against Aldridge also seeks damages from Aldridge arising from Sgt. Perez's October 2018 attack on Anselme, and that incident is within the statute of limitations. At a bare minimum, then, Count I should continue against Aldridge, at least insofar as it arises from the later incident.

But aside from that—Count I should proceed against Aldridge for ***both incidents*** because Anselme has alleged multiple incidents of sexual assault and harassment against her at FCCW, and that they were all caused by Aldridge's deliberate indifference. The Complaint should be read as a whole, and Anselme and Honeycutt allege an overall pattern of Aldridge's deliberate indifference such that sexual assault and/or sexual harassment of prisoners by guards is endemic at FCCW. Anselme alleges that Aldridge's "complicity in sexual assault is so endemic that even the correctional officers responsible for preventing and stopping such behavior dismiss inmates' complaints and engage in sexually predatory behavior themselves." Compl., ¶ 62. Here, where sexual assaults were committed against Anselme—both within and outside of the relevant two year period— and where Plaintiff Honeycutt also alleges sexual assaults against her within the relevant period, all of which Plaintiffs allege were caused by Aldridge's deliberate indifference, the

continuing violation doctrine should apply such that Aldridge should remain in the case even as to the April 8, 2017, assault. *See Depaola v. Clarke*, 884 F.3d 481, 486-87 (4th Cir. 2018) (adopting the "continuing violation" doctrine as to a prisoner's §1983 complaint brought under the Eight Amendment"); *see also Wilson v. United States*, No. 3:18-cv-00890, 2019 U.S. Dist. LEXIS 152280 at *45-46 (S.D.W. Va. Aug. 1, 2019) (same).

The continuing violation doctrine has been cited and discussed in cases similar to the present where multiple sexual assaults and ongoing sexual misconduct are alleged. For example, in *Castillo v. Bobelu*, 1 F. Supp. 3d 1190, 1193 (W.D. Okla. 2014), a group of inmates whose work assignments put them under the authority of non-prison-official state employees brought suit against one such official for sexually harassing and/or sexually abusing them. Some plaintiffs had only been abused by the official outside of the statute of limitations, while others were abused both inside and outside the relevant period. *Id.* at 1202. Analogizing the situation to Supreme Court precedent relating to sexual harassment and hostile work environment claims under Title VII, the court stated: "[T]he court sees no persuasive basis for distinguishing between sexual harassment/assault claims brought under Title VII and those asserted as Eighth Amendment violations under § 1983. ***Behavior outside the statutory time period will be considered for purposes of assessing defendants' liability, if an abusive act took place within it.***" *Id.* at 1201 (emphasis added). The court then held that, for the plaintiffs who alleged sexually abusive conduct within the statute of limitations, "[t]here is … evidence that their claims are timely and they may rely on acts outside the statutory period to establish their claims. *Id.* at 1202. Similarly, here, Anselme has alleged sexual abuse against her both within and outside the statute of limitations, all of which were part of Aldridge's continuing pattern of deliberate indifference to the serious risk of sexual violence toward Anselme. As in *Castillo*, she should be allowed to include abusive acts

10

that occurred outside of the statute of limitations in her claim against Aldridge.

**B.     Plaintiffs Properly Plead Defendant Aldridge's Deliberate Indifference and Responsibility for the Misconduct Against Them, and the Allegations are Sufficiently Serious to Support a Constitutional Violation**

Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). This liability is not premised on *respondeat superior*, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.*

To establish supervisory liability under § 1983, a plaintiff must demonstrate: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799.

Aldridge argues that neither Plaintiff has adequately alleged his liability for the sexual assaults of Plaintiffs. *See* Def. Memo, at 6, 10-11 (Assaults against Anselme) & 12 (Assault against Honeycutt). This is incorrect, because both Plaintiffs have stated sufficient facts relating to Aldridge's involvement directly leading to their sexual assaults at the hands of Rumsey, Griffin, and Perez, all of whom were FCCW corrections officers.

Each Plaintiff alleges that Aldridge had actual or constructive knowledge that his subordinates engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. *See Shaw*, 13 F.3d at 798. Aldridge was the warden of FCCW at all relevant times, Compl.,

¶ 2, and he violated Plaintiffs' rights under the Eighth and Fourteenth Amendments "by being deliberately indifferent to the risks that [Rumsey, Griffin and Perez] would assault [Plaintiffs], **because of known specific histories of misconduct by [those officers] and/or because sexual misconduct is pervasive and endemic at FCCW**." *Id.* at  ¶¶ 77, 81 (emphasis added). Plaintiffs specifically allege that "Anselme and Honeycutt were not Griffin and Rumsey's first victims [and that] *FCCW and* **Aldridge was on notice of their[] proclivity for sexually assaulting inmates** . . ." *Id.* at  ¶ 73 (emphasis added).

Plaintiffs' allegations support a reasonable inference that Aldridge had **actual knowledge** of Rumsey's, Griffin's and Perez's "specific histories of misconduct," and that he was "on notice of **their proclivity for sexually assaulting inmates**." *Id.* (emphasis added). Plaintiffs also cite specific examples of misconduct. Plaintiffs allege that "Rumsey was well known among inmates at FCCW for seeking sexual contact with inmates, often by trading contraband or other favors." *Id.* at ¶ 61. Plaintiffs allege that, due to the camera in Anselme's cell, "Aldridge was … on notice of [Griffin's] attack, and did nothing about it until Anselme reported the attack herself, presumably hoping that the situation would blow over." Compl. ¶ 55. Plaintiffs also allege that "Griffin had a long history of sexual misconduct at FCCW that . . .  Aldridge did nothing to stop. In October of 2010, Griffin assaulted Inmate C, in an incident with several details similar to his actions toward Anselme." *Id.* at ¶¶ 57-60. Finally, Plaintiffs allege that Perez was "well known around FCCW for asking inmates to expose their genitals and offering special favors to those who complied." *Id.* at ¶ 40.[4] Taken together, Plaintiffs' allegations fairly allege that Aldridge was on notice of, at least,

---

[4] While Defendants attempt to recast this allegation by stating that "[a] vague allegation of a reputation **among inmates** does not constitute a specific history of misconduct known to Aldridge," Def. Memo, at 11, the actual Complaint allegation is not limited to a reputation "among inmates" only.

these specific histories, but did nothing. Plaintiffs also allege numerous facts showing that the sexual assault of inmates by corrections officers is endemic at FCCW. *Id.* at ¶¶ 63-70.

Plaintiffs further allege that Aldridge's response to his knowledge of the specific histories of the involved officers, as well as of the past history of sexual assault of inmates by corrections officers at FCCW, was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and that there that there was an "affirmative causal link" between Aldridge's inaction and the sexual assaults of Plaintiffs. *See Shaw*, 13 F.3d at 798.

Anselme alleges that she specifically reported Griffin's May 10, 2017, sexual assault, to FCCW officials including Aldridge, but was never transferred in spite of her request. Compl. ¶ 34-36. Later, because she was forced to remain at FCCW, she was assaulted and victimized again, by Perez. *Id.* at ¶¶ 39-42. She also alleges that, even before she reported it, Aldridge was "on notice of the attack," by Griffin, but did nothing until she reported it. *Id.* at ¶ 55. Plaintiff alleges that Aldridge's deliberate indifference "facilitated Griffin's attack on Anselme, along with Griffin's subsequent psychological torture of Anselme…." *Id.* at ¶ 56. Plaintiffs also allege that Aldridge's failure to take action on Griffin's 2010 assault of Inmate C directly, which had been reported to FCCW officials, allowed him to remain at FCCW and assault Anselme. *Id.* at ¶¶ 57-60. Plaintiffs also allege that Aldridge was on notice of Griffin and Rumsey's "proclivity for sexually assaulting inmates," but that he "failed to terminate their employment before they could assault Anselme and Honeycutt." Compl., ¶ 73.

Defendants argue that Plaintiffs have not cited enough in the way of "specific histories" of misconduct by Perez, Rumsey and Griffin to support an inference that Aldridge had actual or constructive notice of any risk, *see* Def. Memo, at 6, 11-13, that Plaintiffs did not allege that Aldridge was present at Honeycutt's sexual assault, *id.* at 12, that Plaintiffs have only brought

forth "generalized statements" from former inmates and lawyers regarding sex assault at FCCW, and that Plaintiffs do "not cite founded cases of sexual misconduct coupled with a lack of administrative response." *Id.* at 13. But no such allegations are required, as this does not set forth the proper test. *See Makdessi*, 789 F.3d at 126.

In *Makdessi*, a prisoner brought suit against Virginia Department of Corrections employees after he was sexually assaulted in a Virginia prison after having made numerous complaints about physical and sexual abuse in the prison. *Id.* at 129. The plaintiff, who had been previously victimized (both verbally and physically), had filed "numerous written letters and grievances, about physical and sexual abuse he suffered in prison." *Id.* at 135. Despite his stature, vulnerability, and prior complaints, he was then placed again in a cell with an aggressive gang member who, again, sexually assaulted him, repeatedly, even after complaints were made. *Id.*

After a bench trial, the District Court denied the plaintiff's claims because the "prison officials named as defendants in [the] suit did not actually know of the substantial risk of harm that [he] faced." *Id.* In reversing, the Fourth Circuit stated that:

> A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the substantial risk … was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.

*Makdessi*, 789 F.3d at 133 (internal quotations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "[P]rison officials may not simply bury their heads in the sand and thereby skirt liability." *Id.*  "***[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.***" *Id.* at 134 (quoting

*Farmer*, 511 U.S. at 843) (emphasis added). "Nor is it dispositive that the prisoner did not give advance warning of the risk or protest his exposure to the risk." *Id.* at 134 (quoting *Farmer*, 511 U.S. at 843).

*Makdessi's* holding applies here. Plaintiffs allege a wealth of information that correctional-officer-on-inmate abuse is endemic at FCCW. *See* Compl. ¶¶ 50-73. Plaintiffs fell victim to exactly this conduct. Anselme was sexually assaulted by Griffin in April 2017, and subsequently taunted and psychologically tortured by him. *Id.* at ¶¶ 12-24, 28-33. Yet, in spite of her status as a victim of abuse by an FCCW correctional officer, Anselme was not transferred. *Id.* at ¶ 36. Later, in 2018, while still a prisoner at FCCW, Anselme was again victimized, this time by Perez, who, though he did not touch her, "ordered [her] to show him her genitals," touched himself, told her "he had a big dick, and offered to show it to her,"—conduct for which he was "well known around FCCW." *Id.* at ¶¶ 38-40.

Less than a year later, Rumsey raped Honeycutt in an employees' only area of the prison. *Id.* at ¶¶43-49. Facing these allegations, it should be no defense that there are multiple plaintiffs and that they were victimized by multiple corrections officers. *See Makdessi*, 789 F.3d at 133. All such conduct is part of the same pattern of deliberate indifference. Nor does it matter that Anselme and Honeycut did not give advance notice of the risk or protest their continued exposure to the risk. *See id.* Both Plaintiffs are still imprisoned at FCCW, and both are still at risk for further sexual assaults at the hands of FCCW staff. Compl. ¶¶ 6-7. Plaintiffs have clearly alleged an obvious risk of which Aldridge, as the warden, was on notice. Accordingly, under *Makdessi*, Plaintiffs have met the relevant standard.

Finally, Defendants argue that the referral of Griffin and Rumsey's attacks for criminal investigation and prosecution demonstrates that Aldridge takes sexual assault at FCCW seriously.

15

But prison inmates have a right to be free of sexual assault, not just a right to have sexual assault punished when it occurs.  Aldridge's failure to take appropriate action to prevent sexual assaults at FCCW is the matter at issue, not the actions he took in response to already-completed sexual assaults.  At most, Defendants raise a question of fact as to the significance of Aldridge's corrective action, which cannot be resolved on a motion to dismiss.

### C.  Anselme Has Properly Pleaded a Constitutional Violation Against Perez

Defendants next argue that Anselme has not alleged a constitutional violation against Perez because Anselme alleges only that Perez verbally harassed her.  Defendants contend that "words by themselves" are insufficient to state a violation of the Eighth Amendment, because such conduct is not "objectively, sufficiently serious." Def. Mem. at 8-9. This argument misses the mark.

Anselme alleges that in October of 2018, Perez, a designated officer at FCCW responsible for receiving and evaluating sexual assault complaints, ***ordered*** Anselme to show him her genitals and, when she refused, grabbed his crotch and told her he had "a big dick.," offered to show it to her, and told her she "made his dick hard." Compl. ¶ 39. On another occasion, Perez summarily dismiss Anselme's report of an inmate-on-inmate sexual assault, stating that it wasn't a PREA issue because the aggressor did not touch the victim, and told her to "stop making so much noise" by reporting sexual assault. *Id.* at ¶ 42. Anselme further alleges that Perez was well known around FCCW for soliciting sexual favors from inmates. *Id.* ¶ 40.

As a preliminary matter, Perez's conduct did not consist of words alone. He also grabbed his crotch. *Id.* at ¶ 39. While Defendants argues that Anselme's allegations are not serious enough to support a constitutional violation, this ignores the fact that, at the time this happened, Anselme had previously been seriously sexually assaulted by Griffin. Moreover, Perez's conduct

undoubtedly constitutes an assault. *See United States v. Bryant*, 949 F.3d 168, 180 (4th Cir. 2020) (defining assault as a threat of harm, coupled with an apparent present ability to carry it out).

To a victim like Anselme, who had already been physically sexually assaulted by a corrections officer, at the same facility, a little more than a year previously, Perez's conduct placed Anselme in reasonable fear that Perez would commit sexual battery against her, and is sufficiently serious to support a Constitutional violation. *See Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) ("*Women Prisoners of DC*").[5] In *Women Prisoners of DC*, the district court recognized that:

> There is a substantial risk of injury when officers make sexual remarks in an environment where sexual assaults of women prisoners by officers are well known and inadequately addressed. In free society, a woman who experiences harassment may seek the protection of police officers, friends, coworkers or relevant social service agencies. She may also have the option of moving to locations where the harassment would no longer occur. In sharp contrast, the safety of women prisoners is entrusted to prison officials, some of whom harass women prisoners and many of whom tolerate the harassment. Furthermore, the women are tightly confined, making their escape from harassment as unlikely as escape from the jail itself.
>
> The health problems created by sexual harassment furnish more than enough evidence to satisfy the objective component of the Eighth Amendment analysis. … Plaintiffs' expert in the area of sexual harassment and sexual misconduct [] demonstrated that the abuse caused significant depression, nausea, frequent headaches, insomnia, fatigue, anxiety, irritability, nervousness, and a loss of self-esteem. Though some female prisoners have not suffered as much as the named Plaintiffs in this case, sexual harassment within the three facilities is so pervasive that other women prisoners are very likely to suffer serious harm in the future.

---

[5] *Vacated in part, modified in part*, 899 F. Supp. 659 (D.D.C. 1995), *vacated in part and remanded*, 320 U.S. App. D.C. 247, 93 F.3d 910 (D.C. Cir. 1996), *cert. denied* 520 U.S. 1196 (1997). The district court's holding that sexual assault and harassment at the D.C. jail constituted an Eighth Amendment violation was not disturbed on appeal. *See Women Prisoners of the D.C. Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 929 (D.C. Cir. 1996) (In regard to the district court's finding that "the pattern of sexual assaults on female inmates, especially when coupled with inappropriate remarks by DCDC employees and invasions of the inmates' privacy, rose to the level of objective cruelty that violated the Eighth Amendment," the court noted that "[a]ppellants challenge three aspects of the prescribed remedies.")

*Id.* at 665. The district court held that

> Defendants have violated the subjective standard of the Eighth Amendment by acting with 'deliberate indifference' to the condition of sexual harassment which women prisoners at the three facilities must endure. The Court finds that Defendants knew of and disregarded an excessive risk of sexual assaults and harassment of women prisoners. The evidence demonstrated that the women prisoners filed complaints with the police and they sent [grievances and] letters of complaint to prison administrators. The circumstantial evidence allows at least the inference of deliberate indifference since the harassment was so obvious. Indeed, assaults are widely known by DCDC staff, vulgar comments are made openly and women are fondled publicly.

*Id.* at 665-66. Plaintiffs' allegations related to sexual harassment and assault in *Women Prisoners of DC* are eerily similar to Plaintiffs' allegations here, both as to Perez's assault on Anselme, and as to the pervasive atmosphere of sexual predation at FCCW. *See* Compl. ¶¶ 64-72.

Accordingly, as in *Women Prisoners of DC*, Plaintiffs' claims should be allowed to proceed, even to the extent they arise from sexual abuse without physical contact, because such conduct can cause an objective serious injury to an inmate like Anselme. *See De'Lonta v. Clarke*, No. 7:100-cv-00483, 2013 U.S. Dist. LEXIS 5354, at *12 (W.D. Va. Jan. 14, 2013) ("Courts must conduct a fact-intensive, case-by-case inquiry to determine if the sexual abuse was sufficiently serious.") (citing e.g., *Calhoun v. DeTella*, 319 F.3d 936, 939-40 (7th Cir. 2003); *Berry v. Oswalt*, 143 F.3d 1127, 1133 (8th Cir. 1998)). As recognized in *De'Lonta*, there is no hard and fast rule as to the conduct that can constitute a constitutional violation. *See id.* *13-14.

Defendants' citations seeking to minimize Plaintiffs' allegations are distinguishable. *See* Def. Memo, at 8-9. While the standard for proving violations of the Eighth Amendment based on excessive force, versus the standard for proving such violations based on sexual assault and sexual harassment, are both the same deliberate indifference standard, there is one important difference: while some level of physical force may be necessary to carry out the legitimate functions of a prison, *no* sexual abuse of a prisoner by a correctional officer—regardless of whether physical

18

contact is involved—can ***ever*** serve legitimate penological purpose. *See Farmer*, 511 U.S. at 834; *see also Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) ("Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct, including but not limited to sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'").  For this reason, some of Defendants' cases that deal solely with excessive force without a sexual element are inapposite. *See, e.g., Wilkins v. Gaddy*, 559 U.S. 34 (2010), *Whitley v. Albers*, 475 U.S. 312 (1986), *Henslee v. Lewis*, 153 Fed. App'x 178 (4th Cir. 2005), *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *Morrison v. Martin*, 755 F. Supp. 683 (E.D.N.C. 1990).

As to Defendants' cases that relate to verbal sexual assault, or touching, or a combination of the two, those cases are also distinguishable. To begin with, such holdings do not comport with "evolving standards of decency that mark the progress of a maturing society," *See Graham v. Florida*, 560 U.S. 48, 58 (2010) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). In *Graham*, the Court decided the issue of whether sentencing a juvenile to life in prison without parole for a non-homicide offense violated the Eighth Amendment. *Id.* In the process of determining that it did, the Court stated:

> To determine whether a punishment is cruel and unusual [under the Eighth Amendment], courts must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society. This is because the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society change.

*Id.* Courts have relied upon conceptions of evolving standards of decency, as exhibited by laws preventing sexual conduct between correctional officers and inmates (such as PREA and VA Code § 18.2-64.2 & 18.2-67.4), to find that even conduct that was previously tolerated can violate the Eighth Amendment. *See Hayes v. Dahlke*, No. 9:16-CV-1368, 2017 U.S. Dist. Lexis 180424, at

19

*15 (N.D.N.Y. Oct. 30, 2017) (citing *Graham's* "contemporary standards of decency" language, and stating that: "[u]nder this analysis, "the officer's conduct in [*Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997) (cited by Defendants here)] would flunk its own test today."); *see also De'Lonta,* 2013 U.S. Dist. LEXIS 5354, at * n.9; *see also Chapman v. Willis*, No. 7:12-cv-00389, 2013 U.S. Dist. LEXIS 74694, at *20-21 & n.7 (W.D. Va. May 28, 2013) (referring to the "contemporary standards of decency" language, and holding "objectively, sufficiently serious" requirement was met in a situation where female corrections officer made "sexual remarks over the course of six months, with one instance of stroking his penis and four instances of taking his hands and rubbing them on her breasts and/or buttocks.").

In the face of such evolving standards of decency, verbal sexual harassment coupled with gestures and a prior sexual assault of the victim should be considered sufficiently serious to constitute a constitutional violation. Perez's conduct has no penological justification and can cause physical pain to a vulnerable inmate who has been previously sexually assaulted. *See Women Prisoners of DC*, 877 F. Supp. at 665 (citing expert testimony at trial that sexual harassment can cause, among other things, "nausea, frequent headaches, insomnia, fatigue, anxiety . . .").[6] For this reason, the claim against Perez should be allowed to proceed.

### D.      Plaintiffs Have Properly Pleaded a Claim for Injunctive Relief

Defendants' argument that FCCW is not subject to suit in this case is correct, and Plaintiffs agree that FCCW should be dismissed as a defendant in this case.  However, Plaintiff's claim for

---

[6] To the extent Plaintiffs are granted leave to amend this claim, which they request if the Court is inclined to grant Defendants' motion, Plaintiff Anselme will certainly include additional factual allegations regarding the physical pain caused by both sexual assaults against her.

injunctive relief should move forward against the warden of FCCW.[7]

Defendants argue that Plaintiffs' injunctive claim fails because Plaintiffs have not alleged a constitutional violation. This is incorrect, for the reasons argued above. Moreover, Defendants argue that Plaintiffs must plead that Aldridge himself violated Plaintiffs' constitutional rights through his policies at FCCW. Def. Mem. at 17-18. While Plaintiffs have done so, *see, supra* § IV.B, that is not a requirement for this claim. In a claim requesting injunctive relief under § 1983, "no direct and personal involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court." *D.T.M. v. Cansler*, 382 Fed. App'x 334, 338 (4th Cir. 2010). Indeed, it is well-recognized that in official-capacity suits for injunctive relief, the defendant official is a mere stand-in for the state, which is the real party in interest. *See Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997).

Finally, Defendants' argue that the Complaint only alleges two sexual assaults, and that this is not enough to establish a right to injunctive relief. Def. Mem. at 17. Defendants discount Plaintiffs' allegations that sexual abuse is widespread at FCCW as "anecdotal and generalized." *Id.* But that is a sufficiency of the evidence argument, inappropriate at the motion to dismiss stage. Plaintiffs have alleged specific facts supporting an inference that sexual abuse by correctional officers is a serious, continuing problem at FCCW, which is all that is required at this stage.

### E.    Plaintiffs Request Leave to Amend

Should the Court sustain Defendants' motion to dismiss in whole or in part, Plaintiffs request leave to amend their Complaint to allege additional facts to correct any defects identified by the Court. Additionally, Plaintiff's request leave to amend the Complaint to properly name

---

[7] Aldridge has been ousted as warden of FCCW since Plaintiffs filed this case. Plaintiffs request leave to amend their Complaint to name the new warden, Mariea Lefevers, as defendant to the claim for injunctive relief. *See infra* § IV.E.

Rumsey and Perez, and to substitute Mariea Lefevers as the nominal defendant for Plaintiffs' claim

for injunctive relief.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

motion to dismiss.


Dated: June 29, 2020                              Respectfully submitted,


                                  By:      /s/ *Robert O. Wilson*
                                           Robert O. Wilson (Virginia Bar No. 77791)
                                           Wilson Law PLC
                                           2 South Main Street, Suite 409
                                           Harrisonburg, Virginia 22802
                                           Tel. (540) 430-0122
                                           E-mail:  robert@thewilsonlaw.com

                                           Stan M. Doerrer (Virginia Bar No. 88857)
                                           Law Office of Stan M. Doerrer PLLC
                                           950 N. Washington Street
                                           Alexandria, VA. 22314
                                           Tel. (703) 348-4646
                                           Fax (703) 348-0048
                                           E-mail:  stan@doerrerlaw.com

                                           *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on June 29, 2020, I filed the foregoing using the Court's electronic filing system, which generated a notice of electronic filing to all counsel of record.

/s/ *Robert O. Wilson*
Robert O. Wilson (Virginia Bar No. 77791)
Wilson Law PLC
2 South Main Street, Suite 409
Harrisonburg, Virginia 22802
Tel. (540) 430-0122
E-mail:  robert@thewilsonlaw.com