# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| VIVIANA ANSELME & ALYSHA HONEYCUTT, | Case No. 3:20-cv-5 |
| *Plaintiffs*, | |
| v. | MEMORANDUM OPINION |
| FLUVANNA CORRECTIONAL CENTER FOR WOMEN, *et al.*, | JUDGE NORMAN K. MOON |
| *Defendants*. | |

Alleging unconstitutional conduct at Fluvanna Correctional Center for Women ("FCCW"), Viviana Anselme and Alysha Honeycutt ("Plaintiffs") seek damages and injunctive relief against FCCW, the warden, and three other prison officials. Plaintiffs assert three 42 U.S.C. § 1983 claims. Defendant Eric Aldridge, the warden at the time, and Defendant Perez, a prison official who allegedly harassed Plaintiff Anselme, move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Defendants Eric Griffin and Raheem Rumsey did not file a motion. Claims against Griffin and Rumsey will proceed and are not subject to this motion to dismiss.

The Court will grant Defendants' motion to dismiss in part. Counts I and II will be dismissed with prejudice. Count III will be dismissed without prejudice against FCCW and Aldridge. The Court will afford Plaintiffs leave to amend, permitting Plaintiffs to request more specific and tailored relief and to properly name Defendant Rumsey.

1

## I. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim; it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). On a motion to dismiss, the Court must take as true all factual allegations in the complaint, draw all reasonable inferences in the plaintiff's favor, disregard any legal conclusions, and not credit any formulaic recitations of the elements. *See Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

## II. BACKGROUND AS ALLEGED

The earliest incident involves the claim that Griffin sexually assaulted and psychologically tortured Anselme. Not long after her arrival in 2017, Griffin began "lurk[ing] around" Anselme's cell and "pac[ing] back and forth to look at Anselme." Dkt. 1 ¶ 13. On April 8, 2017, Anselme disrobed and bathed at the sink in her cell. *Id.* ¶ 14. After putting on a towel and applying lotion, she noticed Griffin standing at the door. *Id.* Before he moved on, he whispered that her actions were an "indecent exposure charge." *Id.* ¶ 15. Just a few minutes later, Griffin returned. At this point, Griffin told Anselme, "I love your ass. I won't write you up. Just let me see it again[;] … [j]ust let me feel it." *Id.* ¶ 17. He then sexually assaulted Anselme, repeatedly plunging his fingers in and out of her vagina—so violently that she began to bleed. *Id.* ¶ 18.

After this incident, Griffin subjected Anselme to sexual comments, which Plaintiffs contend amounted to psychological abuse. *Id.* ¶ 56. He began calling her "Juicy," and he attempted to check on her several times a day, often asking "Are you O.K.?" *Id.* ¶¶ 21–22, 25. Anselme was terrified during her exchanges with Griffin. *Id.* ¶¶ 20–26. On one occasion, another inmate heard

Anselme say to Griffin that she would not "show [Griffin] her pussy" or "touch herself" for him. *Id.* ¶ 33. Anselme told Griffin she was going to report his behavior. In response, he laughed and said "Go ahead. They will never believe you." *Id.* ¶ 32. On May 24, 2017, Anselme filed a formal grievance. She requested a transfer from FCCW and reported the details of Griffin's assault to Defendants FCCW and then-warden Aldridge. *Id.* ¶ 34. After the prison completed its investigation, it referred Griffin's case for prosecution. *Id.* ¶ 37. Griffin was later convicted of felony carnal knowledge of an inmate. *Id.*

The second incident concerns Officer Perez. Anselme alleges that Perez ordered Anselme to show him her genitals in October 2018. *Id.* at ¶ 39. On multiple occasions Perez commented to Anselme that he had "a big dick," that she "made his dick hard," and that Anselme made him lose "control." *Id.* ¶¶ 39–41. Perez was responsible for receiving and evaluating sexual assault complaints at FCCW. *Id.* ¶ 41. Perez misstated to Anselme the requirements under the Prison Rape Elimination Act ("PREA") to report sexual assault, and discouraged Anselme from "making so much noise" by reporting sexual assaults. *Id.* ¶ 42.

The third incident involves the claim that another officer, Defendant Rumsey, raped Plaintiff Honeycutt on November 20, 2019. The complaint states that Rumsey removed her from her cell, took her through a door in an employee-only area where there was no video surveillance footage. *Id.* ¶ 43. He forced Honeycutt to perform oral sex before raping her. *Id.* ¶ 46. Rumsey left the area after being summoned over the intercom by another officer but instructed Honeycutt to remain where she was. *Id.* ¶ 47. He returned shortly thereafter and again forced her to perform oral sex and raped her. *Id.* ¶¶ 48–49. Honeycutt filed a complaint and grievance against Rumsey, but the FCCW grievance department told her that her allegations fell under PREA and that the department "ha[d] no authority to investigate [her] PREA allegation." Instead, the department

stated that it had referred her complaint to "SIU," the Virginia Department of Corrections' Special Investigations Unit. *Id.* ¶¶ 51–52.

The complaint further alleges that Aldridge knew of the sexual misconduct within the prison and that knowledge should also be imputed to FCCW. To establish such knowledge, Plaintiffs specifically assert that: (1) Anselme's cell was always monitored by video camera, so Griffin's assault on Anselme was visible, *id.* ¶¶ 54–55; (2) Griffin has a long history of sexual misconduct at FCCW, including an assault on an inmate in 2010, *id.* ¶¶ 57–60; (3) Rumsey was "well known" for trading sexual contact for favors, *id.* ¶ 61; (4) Perez engaged in sexual misconduct as well, *id.* ¶ 62; and (5) Perez did not take sexual assaults at the facility seriously, even though he was the officer responsible for fielding complaints about sexual assaults, *id*. The complaint also provides testimony, reports, and surveys documenting a history of sexual misconduct issues at FCCW. *Id.* ¶¶ 64–73.

Plaintiffs originally filed suit in Fluvanna County Circuit Court on April 4, 2019. Dkt. 18-1. The initial state filing was against only Griffin and FCCW. *Id.* The state court action was nonsuited on August 16, 2019,[1] with Plaintiffs filing the present action on February 14, 2020.

### III.   DISCUSSION

#### A. Section 1983 Violations Against Plaintiff Anselme (Count I)

Plaintiffs' first count seeks damages against Defendants Griffin, Perez, and Aldridge for violating Plaintiff Anselme's rights under the Fourth, Eighth, and Fourteenth Amendments. Defendants Aldridge and Perez move to dismiss Count I. The Court grants both motions. Plaintiffs are time barred from asserting claims against Aldridge arising from Griffin's assault. Plaintiffs

---

[1] The parties cite the nonsuit as occurring on August 16, 2020. This appears to be a typo, the correct nonsuit date is August 16, 2019.

also have failed to state a claim against Aldridge as it related to Perez, as his actions did not amount to a constitutional violation.

1. Aldridge—Statute of Limitations and the Continuing Violation Doctrine

For Section 1983 cases in Virginia, federal courts borrow the two-year statute of limitations for personal injury suits. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014); Va. Code § 8.01-243(A). Because Virginia law allows for tolling of personal injury claims in circumstances where a nonsuit was taken by a plaintiff, the Court looks to Virginia's nonsuit tolling provision.

Under Virginia law, when a case is nonsuited, the statutes of limitations on the claims asserted in the nonsuit are tolled for six months. Va. Code § 8.01-229(E)(3). Additionally, the provision bars plaintiffs who take a nonsuit from tolling claims against a new defendant who was not part of the original suit. *See Hampton v. Meyer*, 847 S.E.2d 287, 288 (Va. 2020). Nonsuit tolling applies when "'there [is an] identity of the parties' in the initial action and the recommenced action." *Richmond v. Volk*, 781 S.E.2d 191, 194 (Va. 2016) (quoting *Casey v. Merck & Co.*, 722 S.E.2d 842, 846 (Va. 2012)). The Supreme Court of Virginia affirmed such an understanding in *Hampton*, 847 S.E.2d at 288. The *Hampton* Court recognized an exception to the identity-of-the-parties requirement where, assessing the complaint as a whole, it is clear that a plaintiff intended to bring suit against a specific person, but used the wrong name—a "misnomer." *Id.* at 291.

At question here is whether Plaintiffs are entitled to the benefit of Virginia's nonsuit tolling provision, Va. Code § 8.01-229(E)(3), as against Aldridge. They are not. Plaintiffs did not name Aldridge as a defendant (or party) in the state-court complaint. Nor did they misname him in that case, remedying their error in the later filing. Because Aldridge was not named in the previous

5

suit, there is no tolling, which means that any claim against Aldridge under Count I would have had to have occurred within the two-year limitations window.

The Griffin assault occurred on April 8, 2017 and the Perez incident took place in October 2018. Because Plaintiffs' complaint against Aldridge was not filed in this Court until February 14, 2020, Aldridge might be held accountable for the Perez incident, but not the Griffin assault.

The statute of limitations inquiry typically stops here. However, Plaintiffs argue that the continuing violation doctrine applies. Dkt. 27 at 8. Plaintiffs' argument is misplaced, as the applicable case law precludes a finding that Aldridge committed a continuing violation.

In a case concerning deliberate indifference to medical needs,[2] the Fourth Circuit has held that "[a] plaintiff's claim of a continuing violation may extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act." *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018). A plaintiff can successfully allege a continuing violation under §1983 if they "(1) identify a series of acts or omissions that demonstrate deliberate indifference to [] serious medical need(s); and (2) place one or more of these acts or omissions within the applicable statute of limitations for personal injury." *Id.* (citation omitted). However, the doctrine of continuing violations is not permitted for claims based on discrete acts of unconstitutional conduct. *Id*. The continuing violation doctrine applies in instances where a single harm results in a plaintiff's continuing injuries. *Id.* at 487. However, there are circumstances in which "repeated events give rise to discrete injuries." *Heard v. Sheahn*, 253 F.3d 316, 320 (7th

---

[2] Although *DePaola v. Clarke* addressed the continuing violation doctrine in the context of a § 1983 claim concerning deliberate indifference to medical needs, the Court is not aware of any reason why this principle would not equally apply to a failure to protect or deliberate indifference claim under § 1983, and indeed, the parties rely on this principle here.

6

Cir. 2001). Where repetitive conduct results in discrete injuries, the damage from each discrete act is "readily calculable" and there is no excuse to delay bringing suit. *Id.*

As applied here, Plaintiffs have not alleged a continuing violation because of the discrete and varied circumstances underlying the alleged misconduct against Plaintiffs. Plaintiffs make three specific allegations against officers Griffin, Rumsey, and Perez. To be sure, the complaint purports to string each incident together as one continuous violation. But the behavior in question occurred over the course of three years, included three different parties, and involved three substantively different types of misconduct, prompting different responses from FCCW.

There is insufficient evidence of continuous violations which could extend the statute of limitations, like the Fourth Circuit found in *DePaola*. There, the plaintiff had well-documented severe mental health issues. *Id.* at 484. During his time in prison, officials subjected the plaintiff to "continuous[] solitary confinement." *Id.* He allegedly suffered from extreme agitation, hyperactivity, depression, sleeplessness, and bizarre thoughts — even attempting suicide on two occasions during his incarceration term. *Id.* Despite notifying numerous prison officials of his mental illness, he received no treatment and was prevented from even speaking with an institutional psychiatrist or psychologist. *Id.* at 485. Plaintiff "repeatedly sought help from officials and medical staff," and exhausted all his administrative remedies. *Id.* The Fourth Circuit concluded that the plaintiff in *DePaola* alleged deliberate indifference to a serious medical condition on numerous occasions over the course of many years for the same conduct—denial of medical treatment. Unlike *DePaola*, the case at bar involves three distinct acts that were spread out over the court of three years; they do not constitute a continuing violation. And in any event, none of the conduct concerning Griffin occurred during the applicable limitations period.

Indeed, the discrete and substantively different nature of the incidents is paramount. One involves a forcible sexual assault by Griffin, who was later investigated and terminated; the other concerns verbal harassment and sexual gestures by Perez. The complaint does not state what, if any, response FCCW took to Perez's alleged misconduct. *See Mueller v. Bennett*, No. 3:18-cv-528, 2020 WL 1430430 at *6 (E.D. Va. 2020) ("The 'mere existence of the [allegedly unconstitutional condition] does not amount to a continuing violation.'") (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001)). The Court finds that the continuing violation doctrine does not apply here.

2. Perez — Sexual Harassment as a Constitutional Violation

Insofar as Count I relates to Defendant Perez, there is no statute of limitations issue. The alleged acts took place in October 2018, within the two-year limitations period.

The central issue regarding the claim against Perez is whether his actions amounted to a constitutional violation as understood within the context of § 1983. The Court concludes that they do not.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Courts use a two-prong approach to determine if conduct amounts to a violation under the Eighth Amendment. First, the plaintiff must show the deprivation alleged is, objectively, "sufficiently serious," and "that [plaintiff] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The second prong is subjective, requiring that a prison official has a "sufficiently culpable state of mind." *Id*. In the context of prison, deliberate indifference to an

8

inmate's health or safety can fulfill the subjective intent requirement. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Deliberate indifference "'entails something more than mere negligence' but does not require actual purposive intent. 'It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm.'" *De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (quoting *Angelone*, 330 F.3d at 634).

With respect to the first prong, "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)); *id.* at 244 (finding that the allegations in *Jackson*, which involved a prison psychologist (1) sending an inmate "one 'sexually explicit and lurid' letter; (2) posing 'seductively before [Jackson] and whisper[ing] sexually explicit words to [him]'; and (3) 'plant[ing] her groin area in [Jackson's] face while [he] was seated for [his] haircut in the barber's chair,'" did not amount to a constitutional violation). In addition, courts have held that although sexual abuse may rise to the level of a constitutional violation, sexual harassment — through words alone — does not; some sort of physical contact is required. *See, e.g.*, *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *5 (W.D. Va. May 28, 2013); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990), *aff'd*, 917 F.2d 1302 (4th Cir. 1990) (unpublished); *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1986).

The allegations of sexual harassment by Perez, though deeply troubling, were discrete in nature and do not rise to the level of a constitutional violation. Sexual harassment alone does not meet the objective prong for an Eighth Amendment violation. The law requires additional allegations to meet the requirement under § 1983 of physical contact between the Plaintiff and Defendant. Plaintiffs allege no such physical contact with Perez. Plaintiffs argue that Perez's

9

"contact" with his own genitals should be held to satisfy that requirement. But such an argument is unpersuasive and not supported in law. The Court finds similarly unpersuasive and unsupported Plaintiffs' contention that the requirement of physical contact falls away if the inmate was previously a victim of a sexual assault. Moreover, Plaintiffs place too much reliance on *Women Prisoners*, a case outside the Fourth Circuit involving conduct more pervasive, more widespread, and more harmful than the case at FCCW. 877 F. Supp. 634 (D.D.C. 1994) (finding numerous constitutional violations where multiple rapes, sodomies, public fondling, and assaults occurred in the prison — many of which were widely known by staff).

For the reasons discussed, the Court finds that Count I must be dismissed because Perez's conduct did not amount to a constitutional violation. Because there is no underlying constitutional violation by Perez, any supervisory liability claim for Perez's actions against Aldridge necessarily fails too. *Carter v. Morris*, 164 F.3d 213, 221 (4th Cir. 1999) (noting that any claim of supervisory liability requires that plaintiff suffered a constitutional injury).

### B.  Section 1983 Claims of Plaintiff Honeycutt (Count II)

Plaintiffs seek damages against Defendants Rumsey and Aldridge for violating Plaintiff Honeycutt's rights under the Fourth, Eighth, and Fourteenth Amendments. Because Plaintiffs fail to allege facts supporting a finding of supervisory liability, the Court grants Defendant Aldridge's motion to dismiss Count II.

To prove supervisory liability, a plaintiff must show (1) actual or constructive knowledge of a risk of constitutional injury, (2) deliberate indifference to that risk, and (3) an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Carter*, 164 F.3d at 221 (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Plaintiffs fail to allege facts that satisfy the third prong of *Carter*, an omission fatal to their claim.

Plaintiffs' only contention of a causal link between Aldridge and Rumsey under Count II is the conclusory allegation that Rumsey was "well known" among inmates for seeking sexual contact with inmates. Indeed, their position stretches the bounds of what can be considered an affirmative causal link. There are no factual allegations linking Aldridge to the unlawful act of Rumsey—much less the requisite "*affirmative* causal link between the supervisor's inaction and the *particular* constitutional injury suffered by the plaintiff." *Id.* at 221 (emphasis added). Other (unspecified) inmates' knowledge as to Rumsey's proclivity for sexual contact alone cannot impute supervisory liability to Aldridge—especially if there are no facts in the complaint alleging more than one discrete incident, and no facts further explaining the allegation that Rumsey was "well known" for such misconduct.

Because Plaintiffs do not sufficiently state a cause of action against Aldridge under a theory of supervisory liability, Count II against him will be dismissed.

### C. *Injunctive Relief Against FCCW and the Warden of FCCW*

Plaintiffs' third count seeks equitable relief against FCCW and Aldridge in his official capacity. Plaintiffs allege that FCCW and Aldridge violated, and continue to violate, Anselme and Honeycutt's rights under the Eighth and Fourteenth Amendments by maintaining a policy of inaction or grossly ineffective action in the face of widespread sexual misconduct at FCCW. Specifically, Plaintiffs request that the Court impose an injunction "restraining the unlawful practices alleged herein and/or compelling whatever action is necessary and appropriate to preserve inmate safety at FCCW." Dkt. 1 at p. 15.

1. FCCW – Agreement on Dismissal

Plaintiffs and Defendants agree that FCCW is not subject to suit in this case, and that FCCW should be dismissed. Dkt. 27 at 20. Accordingly, FCCW will be dismissed.

2. <u>Aldridge & Leave to Amend</u>

Because Aldridge is no longer warden of FCCW, Plaintiffs seek to amend their complaint to name the new warden, Mariea Lefevers, as defendant to the claim for injunctive relief. Defendants have no objection Dkt. 30 at 9. Accordingly, the caption of the case will be amended to replace Aldridge with the current Warden, Mariea Lefevers.

The Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123, 128 (1908). But the *Ex parte Young* exception only applies where there is an ongoing violation of federal law, not in instances where a plaintiff attempts to rectify the harm done in the past. *See Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 488–89 (W.D. Va. 2019). When an official-capacity suit is brought, the defendant-official acts as a stand-in for the state, which is the real party in interest. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997).

For a claim requesting injunctive relief under § 1983, no direct and personal involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court. *D.T.M. v. Cansler*, 382 F. App'x 334, 338 (4th Cir. 2010). Absent a constitutional violation, Plaintiffs may not obtain injunctive relief. *See Boldine v. Holshouser*, 575 F.2d 461, 466 (4th Cir.), *cert. denied*, 439 U.S. 837 (1978); *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). But, "[i]f the court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate injunctive relief." *Farmer*, 511 U.S. at 846.

Moreover, the Prison Litigation Reform Act ("PLRA") specifically provides that a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly

drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A), (g)(7).

Ultimately, the facts presented in the complaint are too remote in nature. Plaintiffs have not put forth allegations that show ongoing Constitutional violations. Plaintiffs allege specific factual accounts of sexual abuse as to Anselme and Honeycutt, but their generalized claims of ongoing abuse within the prison focus on conduct occurring approximately a decade ago. Dkt. 1 ¶¶ 63–73. Moreover, Plaintiffs request for relief is far too conclusory and vague—akin to asking the Court to restrain Defendants from engaging in "unlawful" conduct. That is not specific enough. Any injunction this Court would issue at the conclusion of the case would necessarily need to be narrowly tailored and in compliance with PLRA rules.

Therefore, the Court will grant Defendants' motion to dismiss claims for injunctive and declaratory relief without prejudice, affording Plaintiffs twenty-one (21) days to amend their complaint and properly allege more tailored relief.

## IV. CONCLUSION

The Court grants Defendants' motion to dismiss Count I and Count II against them in full and grants Defendants' motion to dismiss Count III, affording leave to amend. The Court grants Plaintiffs' motion to amend in order to allow Plaintiffs to correct defects in the complaint and to properly name Defendant Rumsey. An accompanying order shall issue.

Entered this __17th__ day of December, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE